FRANK SHARON *vs*. DIRECTOR OF THE DIVISION OF
EMPLOYMENT SECURITY & another.[1]

Norfolk. October 3, 1983. — November 9, 1983.

Present: HENNESSEY, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Employment Security*, Eligibility for benefits, Misconduct by employee.

The board of review of the Division of Employment Security was war-
ranted in denying unemployment benefits to a claimant who was dis-
charged for refusing to make a public apology to a vice president of the
employer to whom the claimant had addressed crude, derogatory
remarks in the presence of other employees. [377-378]

CIVIL ACTION commenced in the East Norfolk Division of
the District Court Department on May 28, 1982.

The case was heard by *Whitman, J*.

*Lawrence L. Blacker* for the employer.

NOLAN, J. The employee, Frank Sharon, sought unem-
ployment benefits following his discharge by his employer,
Apahouser Lock and Security Corporation (employer). He
was at first denied benefits. After a hearing, a review ex-
aminer awarded him benefits finding that his termination
had not been "attributable solely to deliberate misconduct
in wilful disregard of the employing unit's interest." G. L.
c. 151A, § 25 (*e*) (2). The board of review (board) reversed
the review examiner's decision. Upon judicial review, a
judge of the District Court Department reversed the board's
decision, concluding, as a matter of law, that the facts did
not support the board's decision.

Sharon's termination resulted from his confrontation
with the employer's vice president concerning use of a com-
pany car for an assignment in Connecticut.[2] At the conclu-

---

[1] Apahouser Lock and Security Corporation.

[2] Because the board did not conduct an evidentiary hearing, the facts
found by the review examiner are conclusive if supported by substantial

sion of a heated discussion on this matter, Sharon called the vice president a liar and a crude, derogatory name in the presence of several managerial employees. The vice president demanded that he publicly apologize and informed Sharon that failure to do so would result in termination. Sharon refused to do so and was terminated.

Although the review examiner found that Sharon deliberately refused to make a public apology, he awarded Sharon benefits because he found that the employer's demand for a public apology was unreasonable. The board reversed, concluding that the demand for a public apology was reasonable because Sharon had made the derogatory remarks in the presence of several employees. In reversing the board's decision, the judge of a District Court found no indication in the evidence that the employer's interest would be benefitted by an employee's publicly humiliating himself.

We conclude that the board did not commit an error of law and that the evidence does indicate that the employer's interest would be benefitted by a public apology. The issue in this case involves the application of the standard in G. L. c. 151A, § 25 (e) (2), to the facts. Application of law to fact is a function specifically committed to the board. *Garfield* v. *Director of the Div. of Employment Sec.*, 377 Mass. 94, 96 (1979). This is an exercise of the board's judgment which calls upon its experience, technical competence, and specialized knowledge. *Director of the Div. of Employment Sec.* v. *Fingerman*, 378 Mass. 461, 463 (1979).

The apparent purpose of § 25 (e) (2) "is to deny benefits to a claimant who has brought about his own unemployment through intentional disregard of standards of behavior which his employer has a right to expect." *Garfield* v. *Director of the Div. of Employment Sec.*, *supra* at 97. We uphold the board's conclusion that an employer has a right to expect a public apology when insulting remarks, directed

---

evidence. G. L. c. 151A, § 41. See *Director of the Div. of Employment Sec.* v. *Fingerman*, 378 Mass. 461, 463 (1979).

at a company vice president, are made in the presence of other personnel. Unlike *Torres* v. *Director of the Div. of Employment Sec.*, 387 Mass. 776, 779 (1982), this case does not require any specific finding as to Sharon's state of mind because the review examiner found that his misconduct consisted of deliberately refusing to make a public apology. This refusal was obviously intentional.

The judgment of the District Court Department is reversed. Judgment is to be entered in that court affirming the decision of the board of review.

*So ordered.*