ANN MARIE ARBOUR POTRIS *vs.* COMMISSIONER OF THE DEPARTMENT OF EMPLOYMENT & TRAINING & another.[1]

No. 94-P-1749.

Bristol. November 7, 1996. - May 29, 1997.

Present: BROWN, IRELAND, & LENK, JJ.

*Administrative Law,* Judicial review, Findings, Substantial evidence. *Employment Security,* Discharge, Voluntary unemployment. *Employment,* Termination.

Where the record of a hearing before a hearing officer of the Department of Employment and Training did not support the finding of the department's board of review that the employee was not entitled to collect unemployment benefits because she had voluntarily left her job within the meaning of G. L. c. 151A, § 25 (*e*) (1), the matter was remanded for another hearing, if necessary, and further findings. [737-739]

CIVIL ACTION commenced in the Attleboro Division of the District Court Department on March 30, 1994.

The case was heard by *William H. Sullivan, J.*

*Helene Figman* for the plaintiff.

*Macy Lee,* Assistant Attorney General, for the Commissioner of the Department of Employment and Training.

*Edward K. Shanley* for Texas Instruments, Inc.

BROWN, J. Ann Marie Arbour Potris's employment with Texas Instruments, Inc. (Texas Instruments), was terminated when she failed to report to her new job assignment. Potris subsequently filed a claim for unemployment benefits with the Department of Employment and Training (department). Following an initial determination of ineligibility, she requested and was granted a hearing. A hearing officer with the department concluded that Potris was not entitled to collect unemployment benefits because she was discharged pursuant to G. L. c. 151A, § 25(*e*)(2), for "a knowing violation of a

---

[1]Texas Instruments, Inc.

reasonable and uniformly enforced rule or policy of the employer."

Potris then filed an application for review with the department's board of review (board). The board granted Potris's request, and remanded the case to the hearing officer for additional findings. See G. L. c. 151A, § 41. After review of the record, the board concluded that the hearing officer's decision, although ultimately correct, was based on a misapplication of law. According to the board, Potris was not discharged within the meaning of § 25(e)(2), as was found by the hearing officer, but instead left work "voluntarily without good cause attributable to the employer."[2] See G. L. c. 151A, § 25(e)(1). Potris then filed an appeal in the District Court. A District Court judge affirmed the board's decision. We reverse.

Upon examination of the record, we do not think that the board made findings sufficient to enable us to exercise our review function, and accordingly conclude that the board's decision lacks substantial support in the record.[3] This outcome ineluctably results from an application of well-known principles of judicial review of decisions of an administrative agency.

We recite the pertinent facts found by the hearing officer.[4] Potris was employed as a full-time electronic technician with Texas Instruments from March 1, 1984, until her separation, effective October 15, 1992. Potris had complained repeatedly to supervisors and management of her dissatisfaction with her job. Potris believed that her male coworkers were receiving more pay and had greater opportunity for advancement. Potris discussed with her supervisor the possibility of being transferred. This discussion arose in response to a letter from

[2]The board concluded as follows: "In as much as the claimant exhibited an unwillingness to at least try the position and chose not to report to the department to which she was transferred, the Board concludes that the claimant left her work and the claimant's leaving of work was not for urgent, compelling, and necessitous reasons but that the claimant's leaving of work was voluntary without good cause attributable to the employer or its agent . . . ."

[3]As will be seen, the findings that were made, viewed in context, are insufficient to provide a basis for discerning whether the board applied correct legal principles in arriving at its decision.

[4]Since the board adopted the hearing officer's findings of fact, we consider them to be the findings of the board.

Potris to Texas Instruments' corporate headquarters, dated July 17, 1992, in which she detailed her dissatisfaction with the company.

On Friday, October 9, 1992, Potris was notified that she was being transferred to the automotive products division, effective Tuesday, October 13, 1992. The purported reason for the transfer was to accommodate her need for advancement. The new assignment was at the same level as her previous position. Potris refused to work at her new job assignment because she feared that she would have an allergic reaction to the chemicals she alleged she would encounter. The record reflects and the hearing officer so found that "[t]he claimant would not attempt to work in the [automotive products] department as directed because she thought it might be physically bothersome to her and she did not want to wear any adapt[at]ions [e.g., a respirator]."

The hearing officer further found that Potris "suffered some nerve damage to her face after an operation for" temporal mandibular joint (TMJ) syndrome in 1990, and that Potris "refused to wear a respirator because she believed it would bother her TMJ." According to the hearing officer's findings, when Texas Instruments' medical director was told of Potris's TMJ condition, he recommended "a respirator that would sit on top of her head that would hang so as not to bother [Potris's] jaw. The medical director did not inform [Potris] of anything regarding the fumes, but he did indicate that the respirator would give her purified air through tubes and would not interfere with her [TMJ] condition."

On October 15, 1992, Potris was informed by her employer that she was placed on suspension for failure to report to her new job assignment. Thereafter, in a letter dated October 16, 1992, Potris was warned that her employment would be terminated if she did not report to work. Apparently, Potris failed to do so, and her employment was subsequently terminated.

In reviewing the decision of the board, we must determine whether the decision "contains sufficient findings to demonstrate that the correct legal principles were applied, and must review the record to determine whether those findings are supported by substantial evidence." *Guarino* v. *Director of the Div. of Employment Sec.*, 393 Mass. 89, 92 (1984). A decision by the board will be reversed only if it is based upon an error

of law or is unsupported by substantial evidence. See *Boguszewski* v. *Commissioner of the Dept. of Employment & Training*, 410 Mass. 337, 345 (1991).

As noted earlier, although the board adopted the hearing officer's findings of fact, it rejected the determination that Potris was discharged within the meaning of § 25(*e*)(2). Instead, the board concluded that Potris left her job voluntarily within the meaning of § 25(*e*)(1). See note 2, *supra*. The employee "bears the burden of proving either that [she] left [her] employment for good cause attributable to the employing unit, or that [her] reason for leaving was of an urgent, compelling, and necessitous nature that would render [her] departure involuntary." *Crane* v. *Commissioner of the Dept. of Employment & Training*, 414 Mass. 658, 661 (1993).

The board has the final say in administrative proceedings as to whether a claimant is entitled to unemployment benefits. G. L. c. 151A, § 41(*b*). See *Pizura* v. *Director of the Div. of Employment Sec.*, 331 Mass. 286, 291 (1954). It is "not bound by any previous finding of the [commissioner] or his representative [i.e., hearing officer]." *Id.* at 292. The difficulty here, however, is that because the board's conclusion lacks record support, a " 'voluntary' quit is not made out." *Director of the Div. of Employment Sec.* v. *Fitzgerald*, 382 Mass. 159, 161-162 & n.6 (1980). "The departure from work must be both (1) voluntary *and* [emphasis in original] (2) without good cause attributable to the employing unit or its agent." *Raytheon Co.* v. *Director of the Div. of Employment Sec.*, 364 Mass. 593, 596 (1974). See *Reep* v. *Commissioner of the Dept. of Employment & Training*, 412 Mass. 845, 846-847 (1992). At the hearing, both the plaintiff and a representative from Texas Instruments testified that her employment was terminated when she failed to report to her new job assignment. Moreover, the Request for Separation and Wage Information form which Texas Instruments submitted to the department expressly states that the plaintiff was discharged for "gross insubordination."

"It is now settled that a person who is forced to leave work because of compelling personal circumstances has left work involuntarily." *Dohoney* v. *Director of the Div. of Employment Sec.*, 377 Mass. 333, 335 (1979). See cases collected in *Reep, supra* at 847-848. The analytical task of determining whether those "personal reasons which caused an employee in a par-

ticular instance to leave work [were] so compelling as to make the departure an involuntary one" is peculiarly one for the board. See *Raytheon Co.* v. *Director of the Div. of Employment Sec., supra* at 595. "The nature of the circumstances of each individual case, and the degree of compulsion that such circumstances exert on a claimant, must be objectively evaluated." *Crane* v. *Commissioner of the Dept. of Employment & Training, supra* at 661. If Potris "was required by her employer to perform work that was 'clearly antithetical to that for which she was initially employed,' she might have been entitled to terminate her employment and receive unemployment benefits." *Uvello* v. *Director of the Div. of Employment Sec.,* 396 Mass. 812, 816 (1986) (citations omitted). As the present record lacks substantial evidence to support a finding that Potris left her job voluntarily within the meaning of § 25(e)(1), we conclude that her disqualification under that provision was error.[5] See *Sohler* v. *Director of the Div. of Employment Sec.,* 377 Mass. 785, 788-789 (1979). Cf. *Guarino* v. *Director of the Div. of Employment Sec.,* 393 Mass. at 93-94.

The decision of the District Court is reversed. Judgment is to be entered in that court remanding this case to the Department of Employment and Training for another hearing, if necessary, and for further findings. See *Securities & Exchange Commn.* v. *Chenery Corp.,* 332 U.S. 194, 199-201 (1947) (after remand by reviewing court, administrative agency free to "deal with the problem afresh").

*So ordered.*

---

[5]Potris also alleged that the employer failed to accommodate her handicap. Deciding as we do, we leave to the board and the complainant, on remand, to address any question, properly presented, regarding relevance and application of G. L. c. 151B, § 4(16), to the circumstances of this case.